IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WINFIELD WILLIS, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-09-1455 |
| COUNTRYWIDE HOME LOANS SERVICING, L.P., | : | |
| | : | |

...o0o...

## MEMORANDUM

Now pending before the court is a motion for remand to state court, filed by plaintiff Winfield Willis, and a motion for judgment on the pleadings, filed by defendant Countrywide Home Loans Servicing, L.P. ("Countrywide").[1] Mr. Willis, representing himself, has sued Countrywide under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-408, alleging deceptive trade practices, and under state common law for breach of contract, breach of fiduciary duty, fraud, discrimination, and predatory lending.[2] The issues in this case have been fully briefed and no oral argument is necessary. For the reasons stated below, Mr. Willis's motion for remand

---

[1] Countrywide also filed a motion for settlement conference, suggesting that a loan modification could be achieved without the need for further proceedings. Mr. Willis, however, opposed this motion because he wanted to proceed with his fraud, discrimination, and other claims. As I will grant Mr. Willis leave to amend his complaint, I will not rule on Countrywide's motion for settlement conference at this point. The parties will have one week after Mr. Willis submits his amended complaint to notify the court as to whether they would like to proceed with a settlement conference.

[2] Mr. Willis appears to assert new claims under section 2607 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et. seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et. seq.*, in his Opposition to Motion for Judgment on the Pleadings. (*See* Pl.'s Opp. ¶¶ 28, 31.) As these claims are not contained in Mr. Willis's complaint, they will not be considered. Even if the complaint were amended to include these new claims, however, the claims would fail. The statute of limitations on each claim has expired given that this lawsuit was filed over three years after the mortgage was negotiated and effectuated. *See* 12 U.S.C. § 2614 (stating that there is a one-year statute of limitations for claims brought under 12 U.S.C § 2607); 15 U.S.C. § 1640(e) (specifying that there is a one-year statute of limitations for actions brought under this section).

will be denied and Countrywide's motion for judgment on the pleadings will be granted, but with leave for Mr. Willis to amend his complaint as to certain claims.

## BACKGROUND

As this is a motion for judgment on the pleadings, the following facts are presented in the light most favorable to Mr. Willis, the nonmoving party. Mr. Willis, an African-American man, has a residential mortgage loan on his Baltimore, Maryland home that is serviced by Countrywide. Although there is some confusion over which company first held the loan, it is clear that Mr. Willis originally contracted with Bondcorp Realty Services, Inc. ("Bondcorp") to secure the mortgage and the mortgage went into effect on January 2, 2006. (*See* Pl.'s Opp. Ex. A.) Countrywide took over the servicing of the loan from Bondcorp on February 1, 2006. (*See* Pl.'s Compl. Ex. III.) According to Mr. Willis, Bondcorp charged him excessive fees and a higher interest rate than is typical for individuals with similar credit histories. Mr. Willis claims that Countrywide encouraged and rewarded Bondcorp's conduct by providing it with a bonus for securing loans with higher than average interest rates.

Mr. Willis was current with his loan payments as of December 28, 2007. At some point in December 2007 though, Mr. Willis realized that he would not be able to make his loan payments on time. Accordingly, Mr. Willis called Countrywide in December 2007 and January 2008 to ask about loan payment modification programs. During both telephone conversations, Countrywide employees informed Mr. Willis that Countrywide could not modify his loan until he had defaulted on his monthly payments. Mr. Willis missed his January 2008 loan payment and called Countrywide in February 2008 to ask again for a loan payment modification. During this telephone call, a Countrywide employee told Mr. Willis that Countrywide could not modify his loan until he

was reemployed, a condition not mentioned during Mr. Willis's previous conversations with Countrywide employees.

Once Mr. Willis found a new job, he again called Countrywide to request a loan payment modification in April 2008. Countrywide approved Mr. Willis for the Hope program, through which four months of loan payments were credited to Mr. Willis's account for his defaulted monthly payments. Mr. Willis began making his monthly payments again in May 2008 and continued to pay regularly for four or five months. In September 2008, Mr. Willis called Countrywide to ask for another loan payment modification. A Countrywide employee informed Mr. Willis that he qualified for another back payment plan through the Hope program and mailed him the Hope program paperwork on September 20, 2008. Upon receiving the paperwork, Mr. Willis signed the Hope program forms and mailed them back to Countrywide. Countrywide received this paperwork on October 13, 2008. Mr. Willis claims to have continued making his monthly payments for about four months after returning the paperwork.

During this period, Mr. Willis checked with Countrywide every month to learn if funds had been credited for his two months of missed payments pursuant to the Hope program. When Mr. Willis called Countrywide on December 12, 2008, an employee confirmed Countrywide's receipt of his Hope program forms and told him that it could take up to 90 days for his account to be credited. On January 31, 2009, Mr. Willis again called Countrywide and was informed by Dora, a Countrywide employee, that the Hope funds should be credited by the end of February. When Mr. Willis called back in February, he simply was told that the funds had not yet been credited.

On March 17, 2009, Mr. Willis spoke with Countrywide employee Lesley Bell who informed him that Hope program funds had not been credited because Mr. Willis had already received a loan through the Hope program. Countrywide admits that Ms. Bell explained that

3

Countrywide employees had sent Mr. Willis the Hope program paperwork in error. When Mr. Willis then asked if there were any other loan modification programs for which he might qualify, Ms. Bell told him that these programs were only available to borrowers who had paid on time for the previous twelve months. The only other available repayment plan, according to Ms. Bell, would be one which divided the missed payments and added them to future payments such that Mr. Willis's monthly payment would increase. Mr. Willis declined this repayment option.

Mr. Willis called Countrywide again on April 1, 2009 and spoke with an employee named Salvina who confirmed that the Hope program paperwork had been sent to Mr. Willis by mistake. In addition, Salvina informed Mr. Willis that his home was now in foreclosure. After Mr. Willis asked to speak with Salvina's supervisor, he was connected to Joseph Rauschenbach, a supervisor in the home retention department, who agreed that the Hope program forms had been sent in error. Mr. Rauschenbach also informed Mr. Willis that although he was personally unaware of the criteria for qualifying for additional loan modification programs, Mr. Willis was not eligible for any further loan modification programs according to his computer. Mr. Willis then asked to speak with a manager in the Home Retention Department and was connected to Jason George. Mr. George confirmed what the previous employees had told Mr. Willis and explained that Mr. Willis's file could not be reviewed by employees in the loan modification department until approved by a computer. Mr. George denied Mr. Willis's request to speak to an employee in the loan modification department.

On April 20, 2009, Mr. Willis commenced this lawsuit against Countrywide in the Circuit Court for Baltimore City. Countrywide timely removed the case to this court and Mr. Willis now moves to remand the case to the Circuit Court. Countrywide opposes this motion and also moves for

4

judgment on the pleadings, arguing that Mr. Willis's claims fail as a matter of law. I will address each motion in turn.

## ANALYSIS

*A. Motion to Remand*

In any case removed from state court, a district court must remand the case if it lacks subject matter jurisdiction, "for jurisdiction goes to the very power of the court to act." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008); *see* 28 U.S.C. § 1447(c). "[A] party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter." *Strawn v. AT & T Mobility, LLC,* 530 F.3d 293, 296 (4th Cir. 2008). Therefore, when a plaintiff challenges the defendant's removal of a case to federal court, the defendant must prove that the district court has subject matter jurisdiction over the matter. *Id.* at 296-97 (noting that although a defendant need only "*allege* federal jurisdiction with a short plain statement—just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper") (emphasis in original).

Mr. Willis has challenged Countrywide's assertion that this court has subject matter jurisdiction on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, Mr. Willis argues that because Countrywide is registered to conduct business in Maryland, its "principal office" is located in Maryland and thus it should be considered a citizen of Maryland for purposes of establishing diversity jurisdiction. Given that Mr. Willis is a citizen of Maryland, he argues that there is no diversity of citizenship in this case and thus this court lacks subject matter jurisdiction.

As Countrywide is a limited partnership, however, its citizenship for purposes of diversity jurisdiction is determined by the citizenship of all of its partners, whether limited or general. *See Carden v. Arkoma Ass.*, 494 U.S. 185, 195-96 (1990). Both of Countrywide's partners, BANA LP, LLC (f/k/a Countrywide LP, LLC) and BAC GP, LLC (f/k/a Countrywide GP, LLC), are limited liability companies and therefore each has the citizenship of its members. *See General Tech. Applications, Inc. v. Exro LTDA*, 388 F.3d 114, 120 (4th Cir. 2004). Each partner has the same sole member: Bank of America, NA, a national banking association with a main office in Charlotte, North Carolina. Despite Bank of America's presence in Maryland, for purposes of diversity jurisdiction, a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). Bank of America's articles of association clearly state that its main office is located in North Carolina. (*See* Def.'s Opp. to Mot. to Remand Ex. 3.) Therefore, Countrywide and Mr. Willis are citizens of diverse states and this court properly has subject matter jurisdiction over this case. Accordingly, the court will deny Mr. Willis's motion to remand.

   *B.  Motion for Judgment on the Pleadings*

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but not so late as to delay trial. The standard for evaluating a motion for judgment on the pleadings is the same as for a Rule 12(b)(6) motion to dismiss. *See Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002) (noting that the distinction between a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim "is one without a difference"). "Accordingly, we assume the facts alleged

in the complaint are true and draw all reasonable factual inferences in [the nonmoving party's] favor." *Id.* at 406.

As with a Rule 12(b)(6) motion to dismiss, therefore, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

1. Breach of Contract Claims

Mr. Willis asserts that Countrywide breached its "servicing contract" with him by initially refusing to modify his mortgage (Count I) and by misinforming him about the need to be employed to qualify for the loan modification program (Count VI), his eligibility for a second Hope loan (Count X), and the criteria required to qualify for additional loan modification programs (Count XIV). Although Countrywide should have been more accurate in providing information about modifying Mr. Willis's mortgage, its failure to do so is not a breach of contract because it had no underlying duty to modify the mortgage contract. *See Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 790 (4th Cir. 1988) (finding that a party to a contract had no duty to "modify the rights and obligations to which the parties had agreed"); *see also Janusz v. Gilliam*, 947 A.2d 560, 566 (Md. 2008) (noting that "no party has a right to rescind or modify a contract merely

7

because he or she finds, in the light of changed conditions, that he or she has made a bad deal") (internal quotations and alterations omitted). Accordingly, Countrywide's lack of cooperation in helping Mr. Willis modify his mortgage repayment schedule is not a breach of contract.

Mr. Willis now claims in his opposition brief that the contract Countrywide breached was one to modify his mortgage through a second Hope loan. (*See* Pl.'s Opp. ¶¶ 5-9; Pl.'s Compl. Ex. I.) Although this claim most closely aligns with Count X of the complaint, which addresses the initial approval and subsequent denial of Mr. Willis's application for a second Hope loan, Count X only refers to a breach of the "serving contract." (*See* Pl.'s Compl. ¶ 111.) In addition, Mr. Willis has failed to specify the economic damages caused by Countrywide's alleged breach of contract to modify his loan. As Mr. Willis is a pro se plaintiff, the court will grant him 30 days to amend his complaint to allege that Countrywide breached the October 2008 contract, to identify the consideration for the contract, and to specify the economic harm he suffered as a result.

2. Breach of Fiduciary Duty Claims

Mr. Willis argues that Countrywide breached its fiduciary duty by not permitting him to modify his mortgage a second time and by misinforming him about eligibility requirements for Countrywide's loan modification program (Counts I, VI, X, XIV). To state a claim for breach of fiduciary duty, Mr. Willis must prove that Countrywide actually owes him a fiduciary duty. *See Parker v. Columbia Bank*, 604 A.2d 521, 531-32 (Md. Ct. Spec. App. 1992). According to Mr. Willis, Countrywide owed him a fiduciary duty as his loan servicing company and because it received payments from him, instructed him on available modification programs, and advertised its "experience, quality and integrity for this type of work." (*See* Pl.'s Compl. ¶¶ 39, 70, 110, 146.)

Yet "[i]t is pellucid that, in Maryland, the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature." *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990) (internal citations omitted). Thus unless there are "special circumstances or provisions in the loan agreement," Mr. Willis will not be able to prove that Countrywide owed him any fiduciary duty. *See id.* As Mr. Willis has not identified any provision in the mortgage agreement imposing fiduciary obligations on Countrywide, he must demonstrate the existence of special circumstances. In *Parker*, the Maryland Court of Special Appeals recognized that special circumstances could warrant a finding that a lender owed a fiduciary duty to a debtor on a residential construction loan when the lender,

> (1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by [the borrowers] if there were any lien actions pending.

*Parker*, 604 A.2d at 370-71. The court in *Parker* also noted, however, that "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Id.* at 369.

Although Mr. Willis has not expressly alleged that any of these four special circumstances apply, his pleading indicates a belief that Countrywide's receipt of monthly mortgage payments, advertisement of its services as a lender, and instances of advising Mr. Willis about loan modification programs constitute "extra services." Yet these are the types of actions one would normally expect from a bank servicing a mortgage. The possibility that Countrywide may have known that Mr. Willis was "placing his trust and confidence in the bank and relying on the bank to

9

counsel and inform him" is insufficient to establish the existence of a special circumstance without proof that Countrywide consciously assumed this extra duty. *Id.* at 369-70. In *Parker*, the court described the types of cases in which courts have found that lenders performed "extra services." *See id*. at 371. Two of these cases involved lenders that procured credit life insurance for debtors and another involved a bank which had acted as a financial advisor to the borrower for 23 years. *See id.* The *Parker* court distinguished these types of "truly extra, out of the ordinary services" from "services normally provided by a bank for its customer." *Id.* at 371-72. The services provided by Countrywide in this case clearly fall within the latter category, as they are services typically performed by lending banks. Thus in the absence of demonstrating the existence of any special circumstances, Mr. Willis has failed to prove that Countrywide held a fiduciary duty toward him.

    3.  <u>Maryland Consumer Protection Act Claims</u>

Mr. Willis next argues that Countrywide violated the Maryland Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law § 13-301 *et. seq.*, by engaging in deceptive trade practices when it concealed facts and misled him about his eligibility for loan modification programs (Counts II, VII, XI, XV). The CPA provides for a private right of action when an individual seeks "to recover for injury or loss sustained by him as the result of a practice prohibited by this title." § 13-408. The Maryland Court of Appeals has clarified that an individual may only bring a claim under the CPA, therefore, if she can "establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 280 (Md. 2007) (quoting *Citaramanis v. Hallowell*, 613 A.2d 964, 968 (Md. 1992)).

Mr. Willis's only allegation of actual damages in his complaint appears in his charges of breach of contract and breach of fiduciary duty. (*See* Pl.'s Compl. ¶¶ 41, 72, 112, 148). In these

10

counts, Mr. Willis alleges that he suffered $435,000 in damages "based on all loans serviced by Defendant." (*Id.*) In his opposition brief, Mr. Willis adds that he "suffered an actual loss and injury sustained as a result of the Defendant's misleading statements." (Pl.'s Opp. ¶ 17.) Mr. Willis also states in his affidavit that he has "suffered damages from the actions of the Defendant in each Count included in the original Complaint." (Pl.'s Opp., Pl.'s Aff. ¶ 4.) Mr. Willis never describes, however, how his damages were caused by Countrywide's allegedly deceptive trade practices. As the Maryland Court of Appeals has observed, "awarding full restitution [to plaintiffs] who offered no proof of actual injury or loss would be in the nature of a punitive remedy." *Citaramanis*, 613 A.2d at 969. Instead, plaintiffs may only be compensated under the CPA "for the injury sustained due to the defendant's acts and for indirect consequences of such acts." *Id.* Mr. Willis has not alleged that Countrywide's misinformation regarding loan modification programs caused him to suffer any specific harm, apart from the debt that he already owed. Accordingly, Mr. Willis is unable to establish the necessary element of injury or loss required to bring a private claim under the CPA.

    4.   Fraud/Intentional Misrepresentation Claims

According to Mr. Willis, Countrywide committed fraud by intentionally misrepresenting information relating to Mr. Willis's eligibility for loan modification programs to him (Counts III, VIII, XII, XVI). Under Maryland law, to succeed on a claim for fraud, or intentional misrepresentation, the plaintiff must show, by clear and convincing evidence:

> (1) that the defendant made a false representation; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have done the thing from which the injury

had resulted had not such misrepresentation been made; and (5) that such person actually suffered damage directly resulting from such fraudulent misrepresentation.

*Parker*, 604 A.2d at 527.

Mr. Willis has failed to claim that he relied upon Countrywide's alleged misrepresentations. Although Mr. Willis attempted to compensate for this omission by stating in his opposition brief that he "had justifiable reliance on false statements made by the Defendant, and [he] took action based on the reliance," these conclusory allegations would still be insufficient to support his claims of fraud even if they had appeared in his complaint. (Pl.'s Opp. ¶ 18.) Under *Twombly*, Mr. Willis must set forth more than "labels and conclusions" to survive a 12(b)(6) motion to dismiss, which is substantively identical to this motion for judgment on the pleadings. 550 U.S. at 555. Mr. Willis's claim that he had "justifiable reliance" on Countrywide's alleged misrepresentations is conclusory and not supported by the factual averments in his complaint. Similarly, Mr. Willis's assertion that "as a result of Defendant's fraud, [he] suffered damages," is also conclusive and factually unsupported by his complaint. (*See* Pl.'s Compl. ¶¶ 54, 90, 131, 170.) The fact that Countrywide may have misinformed Mr. Willis about its loan modification programs does not imply that Mr. Willis was financially harmed as a result, given that he was already indebted to Countrywide for the amount of his mortgage. Accordingly, Mr. Willis has failed to sufficiently plead the elements of reliance and compensable injury required to prove fraud in Maryland. Thus, Mr. Willis's claims alleging fraud/intentional misrepresentation must fail.

5. <u>Discrimination Claims</u>

Mr. Willis claims that Countrywide discriminated against him by misleading him with respect to his eligibility for loan modification programs because of his race (Counts IV and IX), payment history (Count XIII), and unspecified reasons (Count XVII), and by charging him

excessive points and fees on his mortgage (Count XVIII). Although Mr. Willis did not state which law was violated by Countrywide's allegedly discriminatory practices in his complaint, he writes in his opposition brief that numerous state and federal laws prohibit racial discrimination by "a service provider." (*See* Pl.'s Opp. ¶ 21 (listing "the Civil Rights Act, Maryland Consumer Protection Act, The Truth in Lending Act, the Homeownership and Equity Protection Act, the Equal Credit Protection Opportunity Act, the Real Estate Settlement and Procedures Act, the Fair Housing Act, the Federal Trade Commission, the Fair Debt Collection Practices Act, the Racketeer Influence and Corrupt Organization Act, the Federal Housing Administration, the U.S. Department of Housing and Urban Development, and the Home Owners' Loan Act").)

Assuming that Mr. Willis intended to assert claims of discrimination under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691(f), and Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619,[3] the factual allegations in his complaint are insufficient to support claims of racial discrimination under these laws. As with claims of discrimination under Title VII, to state a prima facie claim of racial discrimination under either the ECOA or FHA, Mr. Willis must establish that: (1) he was a member of a protected class, (2) he applied for and was qualified for Countrywide's mortgage loan modification program, (3) his request to modify his loan was rejected despite his qualifications, and (4) Countrywide continued to modify loans for applicants with similar qualifications. *See Rowe v. Union Planters Bank of Southeast Missouri*, 289 F.3d 533, 535 (8th Cir. 2002) (listing the elements of a racial discrimination claim under both the ECOA and FHA); *see*

---

[3] Of all the laws that Mr. Willis referenced in his opposition brief, the ECOA and FHA would be the most appropriate laws under which to bring claims of discrimination on the basis of race in mortgage lending. *See* 15 U.S.C. § 1691(a) ("It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction…(1) on the basis of race"); 42 U.S.C. § 3605(a) ("It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race").

*also Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir. 1984) (construing a claim of discrimination under the FHA as it would under Title VII); *Faulkner v. Glickman*, 172 F. Supp. 2d. 732, 737 (D. Md. 2001) (applying the *McDonnell Douglas* framework used in Title VII cases to the ECOA and noting that to establish a prima facie case of discrimination under the ECOA, the plaintiff must demonstrate, "that [he] belongs to a class protected by the statute; (2) that he applied for credit for which he was qualified; and (3) that he was rejected despite his qualifications").

Claims of discrimination in Counts XIII, XVII, and XVIII may easily be dismissed because Mr. Willis fails to allege that he was treated disparately by Countrywide because of his race. Counts IV and IX also fail because Mr. Willis has not explained whether he was misinformed about and denied a second loan modification despite his qualifications. Instead, Mr. Willis simply states the actions Countrywide took towards him and alleges that these practices constitute racial discrimination. Countrywide's eligibility criteria for its loan modification programs, however, appear to have been based on race-neutral criteria, such as payment history, employment status, and whether a borrower had previously participated in a loan modification program. In addition, Mr. Willis has not alleged any fact that indicates that Countrywide's employees misinformed him about loan modification criteria because of his race or treated borrowers who were not African-American differently.

Mr. Willis merely states in his opposition brief that "other non-minority races were given more favorable treatment by the Defendant" and that "through discovery and witnesses [he] will prove in trial that Defendant discriminates against African Americans." (Pl.'s Opp. ¶¶ 11, 20.) These statements are too conclusory and speculative to support Mr. Willis's claims of racial discrimination. As the Court noted in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (2009), the need for claims to be plausible to survive motions to dismiss "is not akin to a 'probability

14

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Accordingly, the court will dismiss Mr. Willis's claims of discrimination.

      6.   Predatory Lending Claims

Mr. Willis also alleges in Count XVIII that Countrywide engaged in predatory lending by encouraging finance brokers to engage in "predatory lending deals with higher interest rates than the market" by charging excessive points and fees. (Pl.'s Compl. ¶ 182.) He claims that his mortgage loan was the product of such a deal because his interest rate was higher than it should have been given his credit score at the time. Mr. Willis has failed to cite any law that Countrywide violated by engaging in this allegedly predatory behavior however. Although a pleading need not provide the plaintiff's legal theory to state a plausible claim, it must give the defendant sufficient notice as to the legal basis of the claim. *See e.g., Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 62 (1st Cir. 1992) (noting that "[a]lthough the liberal pleading policy embodied in Rule 8 does not require a party to specify its legal theory of recovery, the pleadings must at least implicate the relevant legal issues"); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1286 at 762 (3d ed. 2004) (explaining that Fed. R. Civ. P. 8 "does not require the district court to fabricate a claim that a plaintiff has not spelled out in the complaint").

Although Mr. Willis refers to the TILA and RESPA in his opposition brief, any claims under these laws would be barred by their respective statutes of limitations. *See supra* note 2, at 1. As the court is already granting Mr. Willis leave to amend his complaint with respect to one breach of contract claim, however, Mr. Willis may use this opportunity to amend his complaint to provide a plausible legal basis for his predatory lending claim.

15

## **CONCLUSION**

For the foregoing reasons, the plaintiff's motion for remand will be denied, the defendant's motion for a settlement conference will be reserved for later ruling, and the defendant's motion for judgment on the pleadings will be granted but with leave for Mr. Willis to amend as to certain claims. A separate Order follows.

December 23, 2009                                          /s/
Date                                                                 Catherine C. Blake
                                                                        United States District Judge